## STRAUS v. SPIEGEL, Inc.
### No. 8923.

Circuit Court of Appeals, Seventh Circuit.
Jan. 24, 1946.

Philip J. McKenna and Allyn J. Franke, both of Chicago, Ill., for appellant.

Carl Meyer, Frank D. Mayer, and Wm. J. Welsh, all of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and KERNER, Circuit Judges.

EVANS, Circuit Judge.

The District Court granted defendant's motion to dismiss this action to recover for a real estate broker's commission because the complaint failed to state a cause of action against the defendant.

There were two complaints filed by the plaintiff. The amended complaint pleaded in some detail the facts.[1] Defendant argued, and the court agreed, that these facts failed to show any employment of plaintiff

by defendant. Our inquiry is, therefore, directed to the specific language of the complaint to determine the very narrow question,—Was plaintiff employed by the defendant?

We quote from the complaint:

"3. * * * plaintiff, as a result of *information furnished by the defendant* * * *, is * * * acquainted with the size, capacity, and uses to which * * * Maxwell Building might be adapted, and had at various times discussed the property * * * with a view of effecting a sale of the premises with C. J. Folger, a(n) * * * officer of * * * defendant * * *;

"4. * * * defendant * * * through Folger and M. J. Spiegel, Jr., also an officer of * * * defendant * * * knew that from March, 1939 * * * plaintiff was a real estate broker * * *;

"5. * * * on * * * the 15th * * * of February, 1943, * * * plaintiff, * * * telephoned * * * Folger at the offices of * * * defendant * * * and stated that representatives of the United States Army were in his office and wished to inspect certain buildings owned by the defendant * * * with a view of leasing one or more of said buildings; * * * defendant * * * through * * * Folger, thereupon directed the plaintiff to bring the representatives of the * * * Army to the office of the defendant * * *; that pursuant to such direction, the plaintiff in the company of the said representatives of the * * * Army went to the offices of the defendant * * * and inspected certain buildings owned by the defendant * * * including said Maxwell Building;

"6. * * * defendant * * * was the owner of two other buildings * * * the Pick and Reach Building, * * *; * * * plaintiff was, on the 15th * * * of February, 1943, requested by the defendant * * *, through * * * Folger, to use his influence on the said representatives of the * * * Army for the purpose of inducing them to lease for the * * * Army the aforesaid Maxwell * * * or the Reach Building rather than the Pick Building for which the said rep-

[1] "An amended pleading which is complete in itself and does not refer to or adopt a former pleading as a part of it supersedes the former pleading." 41 American Jurisprudence, "Pleading", Sec. 313. Wright v. Risser, 290 Ill.App. 576, 8 N.E.2d 966. Hafemann v. Seymer, 191 Wis. 174, 210 N.W. 373. People ex rel. Nelson v. Central Mfg. Bank, 306 Ill. App. 15, 28 N.E.2d 154. See also Washer v. Bullitt County, 110 U.S. 558, 4 S.Ct. 249, 28 L.Ed. 249.

resentatives had expressed a preference; that plaintiff thereupon used his best influence to induce the said representatives to lease the said Maxwell Building in preference to the Pick Building;

"7. That thereafter on the same day, namely, February 15, 1943, the said representatives of the * * * Army told the plaintiff that if * * * defendant * * * would rent the said Maxwell Building to the * * * Army then the Army would not press for a lease on the said Pick Building; that thereafter on the same day the plaintiff advised the defendant, * * * that the Army would be satisfied with the lease on the Maxwell Building and would forego its request for a lease on the said Pick Building;

"8. * * * thereafter * * * defendant, * * * without notice to plaintiff, negotiated directly with the representatives of the * * * Army and on February 18, 1943, the defendant * * * entered into a lease of the so-called Maxwell Building to the * * * Army at an annual rental of $54,000.00;

"9. That the plaintiff, having *procured* a tenant for the said Maxwell Building, who was accepted by the defendant, and having performed services in connection with the leasing of the said Maxwell Building for and on behalf of the defendant, thereupon became entitled to the usual customary commissions amounting to $3,780.00 for such services in procuring a tenant for real estate;

"10. * * *

"11. That there is therefore due and owing to the plaintiff commissions amounting to $4,860.00 * * *;

"12. That plaintiff, as *procuring agent*, has performed all acts to be performed on his part required of him by defendant regarding said lease."

■ These allegations fail, in our opinion, to disclose an employment contract whereby defendant employed plaintiff, and thereby bound itself to pay a commission upon the effectuation of the lease.

It is inferable, or directly alleged, that representatives of the Army, which was seeking building space in Chicago, came to plaintiff, an established real estate broker, and asked for and obtained a list of available properties. On the list submitted were defendant's three buildings. Plaintiff called defendant to seek an interview for the Army officers. He also 'sought an appointment for said officers to view the buildings. Defendant consented to both requests. Plaintiff accompanied the Army representatives to defendant's office and also on the trip to view the buildings. From then on defendant and the Army officials traded alone. In four days all negotiations were completed and the lease executed.

Plaintiff's efforts, at least, manifested a patriotic citizen's desire to aid the Government in its war efforts. Can we say from what is alleged, the efforts were rendered under such circumstances as to obligate the defendant to pay therefor a reasonable broker's commission. Up to this point, that is, up to the first meeting of the Army officers with the broker, there was nothing to even suggest plaintiff's employment by the defendant. If plaintiff was not rendering the gratuitous services of a loyal citizen then it must be concluded that he was the agent of and serving the War Department. It was as their representative that he called up and made inquiry as to space for the Army's needs. The army officials came to him. He called the defendant to inquire *for the Army* whether defendant had building space for rent.

■ If plaintiff represented the Army he could not represent the defendant also, unless the fact of his dual employment was made known to both defendant and the Army and acquiesced in by both of them.[2]

■ In order to recover, it was plaintiff's burden (a) to allege, and (b) to prove, that he was employed by the defendant to lease its building, or, to allege, and to prove, that services rendered by plaintiff were rendered under circumstances known to defendant from which an obligation to pay a commission was implied.

It is significant that the plaintiff did not and presumably could not allege employment. Nor did plaintiff allege a listing of the property with him. Up to this point in the story, we are well satisfied that the complaint failed to allege facts which showed broker employment or facts which implied an agreement to compensate for services rendered.

---

2 8 American Jurisprudence, "Brokers", Sec. 87; Harten v. Loffler, 31 App.D.C. 362; Lincoln v. Levi Cotton Mills Co., 2 Cir., 128 F. 865; Mechem on Agency, Sec. 2412; Reed v. Ziemans, 145 Ill.App. 425.

Do paragraphs 6 and 7 supply the allegations necessary to state a good cause of action? This is a closer question.

"Plaintiff was * * * requested by the defendant * * * to use his influence on the said representatives of the * * * Army for the purpose of inducing them to lease for the * * * Army the aforesaid Maxwell * * * or the Reach Building rather than the Pick Building; * * * plaintiff thereupon used his best influence to induce the said representatives to lease the said Maxwell Building, * * *."

The aforesaid allegations must, however, be read in the light of the previously stated facts, or inferences to the effect that the Army was searching for building space to rent and in the said search had enlisted plaintiff's services. Whether such services were gratuitously rendered or were to be compensated for by the Army is immaterial. The important fact is that plaintiff first appeared in this picture as the purchaser's (or lessee's) agent. He did not *(and could not)* therefore become defendant's agent, save with knowledge and consent of his principal that he was accepting compensated employment from the owner (the lessor).

No such allegations appear. He rendered services—so it is alleged—at defendant's request in persuading his principal to lease the building which the owner preferred to lease to the Army in place of the one for which the Army first expressed a preference. While this influence may have been helpful in changing the Army's selection and may have been beneficial to defendant, and we assume it was, plaintiff may not recover a commission therefor, because he was not employed by the defendant nor were his services the basis of a compensation charge, because they were accepted by defendant knowing plaintiff's position as the lessee's agent. In the absence of appropriate allegations, showing knowledge and acquiescence, the court could not permit a broker who appeared as a purchaser's agent, to collect compensation from the seller.

In this case, however, we do not think the nature of the services requested by the defendant and rendered by the plaintiff amounted to an employment, or were services for which compensation without previous employment, could be collected. If the request for use "of influence" carried any more weight than a statement of the merits of one building over another, it was something plaintiff could not render unless it was his conviction too, that the Maxwell Building was more desirable than the Pick Building for the Army. If any other kind of influence was the subject of barter, the court must refuse to recognize it as the valid basis for compensation.

The judgment is affirmed.