WILL OF BOARDMAN: CHASE, Appellant, vs. AMADON and another, Respondents.

*October 10—November 8, 1922.*

*Wills: Right of testamentary disposition: Regulation: Undue influence: Degree of proof: Sufficiency of evidence.*

1. The right to make testamentary disposition of property is an absolute one which neither the courts nor the legislature can invade and totally destroy, the only jurisdiction being to confine it within proper channels for the protection of society.
2. It requires more than a mere preponderance of the evidence to set aside a will on the ground of undue influence: clear and satisfactory evidence must be produced to accomplish that result.
3. If the trial court did not apply the right legal test to the evidence produced on the issue as to whether or not undue influence was exercised upon the testatrix at the time she executed her will, its findings of fact have no potency to control the judgment of the appellate court as to what the findings should be.

4. Evidence showing that testatrix, an elderly woman, had expressed an intention of repaying her sister-in-law for financial aid rendered to testatrix and her deceased husband by the deceased husband of such sister-in-law, that the same cordial relations were not entertained with the other heirs at law of testatrix, and that her last will, which was drawn by the attorney for the testatrix, provided substantially the same legacies to religious organizations that had been provided for in prior wills and changed only the disposition of the residue of the estate, is *held* not sufficient to show undue influence exercised upon the testatrix in the making of the will.

5. Where the evidence did not show testatrix susceptible to undue influence nor a disposition on the part of the residuary legatee to exercise it, nor did the will show a result indicating its exercise, it was not sufficient to show only that an opportunity existed to exercise it.

APPEAL from an order of the county court of Fond du Lac county: A. E. RICHTER, Judge. *Reversed.*

Proceedings to probate a will. December 6, 1921, Elizabeth Boardman died at the age of eighty-two leaving a will executed April 11; 1921, in which she bequeathed to the Wesleyan Methodist Connection (or Church) of America $1,000; to the Wesleyan Educational Society of Syracuse, N. Y., $500; to Miltonville Wesleyan College, $500; and to Ellen F. Merriam, her sister-in-law, the residue of her estate, including her homestead in the city of Waupun. Her whole estate was valued at about $7,200. She left no husband or children. Her heirs at law were two brothers, one sister, and two nieces. Upon the presentation of the will to probate by Mrs. Merriam objections thereto were filed by one brother and a niece on the grounds of lack of testamentary capacity on the part of the testatrix and of undue influence exercised upon her by Mrs. Merriam. The court found that at the time of the execution of the will the testatrix was of sound mind but that her will was the result of undue influence exercised upon her by Mrs. Merriam, and the probate thereof was denied. From an order entered accordingly the proponent appealed.

*C. E. Hooper* of Waupun, for the appellant.
*James Murray* of Waupun, for the respondents.

VINJE, C. J.    As long as personal existence is dependent upon the enjoyment of material things so long will the law continue in all nations where law prevails to protect within proper limits the right to acquire and hold property and the concomitant right to make testamentary disposition thereof. The latter right is an absolute one that neither courts nor the legislature can invade and totally destroy.    There is jurisdiction only to confine it within proper channels for the protection of society.    *Vance v. Davis*, 118 Wis. 548, 95 N. W. 939; *Ball v. Boston*, 153 Wis. 27, 141 N. W. 8.

Where testamentary disposition of property is made, except for failure to conform to the manner of executing a will, it can be set aside only on one ground, namely, that it is not the will of the testator—either because he lacked testamentary capacity to make it or because it was the result of undue influence exercised upon him by others.    To so set aside a will properly executed requires clear and satisfactory evidence.    *Lepley v. Andersen*, 142 Wis. 668, 125 N. W. 433; *Ball v. Boston*, 153 Wis. 27, 141 N. W. 8.

In the instant case there is practically no conflict in the evidence upon the issue of undue influence—one may well say there is no evidence upon it—certainly no direct evidence.    Upon the trial the main issue was testamentary capacity, and the trial court properly found that it existed. The decision of the trial court discusses the evidence in considerable detail, but it is not possible to deduce from it the fact whether or not the court had in mind the rule that it requires more than a mere preponderance of the evidence to set aside a will on the ground of undue influence and that clear and satisfactory evidence must be produced in order to accomplish that result.    If the trial court did not apply the right legal test to the evidence, then its findings of fact have no potency to control the judgment of this court as to

what they should be.  *Maldaner v. Smith,* 102 Wis. 30, 78 N. W. 140; *Kelley v. Crawford,* 112 Wis. 368, 88 N. W. 296; *Ball v. Boston,* 153 Wis. 27, 141 N. W. 8.

But in the absence of rather conclusive proof to the contrary we must assume that the trial court viewed the facts in the correct legal light.  So doing, we reach the conclusion that the evidence, giving it every reasonable intendment in support of the conclusion reached by the trial court, does not support it.  It does not appear by clear and satisfactory evidence that Mrs. Merriam exerted any undue influence upon the testatrix.  There is no testimony that she used any influence whatever upon her as to the disposition of her property.

The testatrix had lived alone and had done her own housework and had transacted all her business since the death of her husband, which occurred some fifteen years prior to her own death.  About a year before she died she met with an automobile accident and afterwards had to have some assistance in the way of running errands, but had done her own housework after her return from the hospital. Mrs. Merriam frequently called on her during the last year and had rendered some assistance in the way of errands and the like.  A few weeks before the execution of her last will the testatrix called at the office of her attorney, C. E. Hooker, for the purpose of having him draw a new will for her.  He was not in, and after waiting a couple of hours she left.  The day the will was drawn she requested Mrs. Merriam to go to Mr. Hooker's office and ask him to come to her house, which he did.  Mr. Hooker saw the testatrix alone and made memoranda as to how she wanted the will drawn.  He testified that she told him she did not want to leave anything to her brother-in-law, Mr. Boardman; that she did not want Mr. Warner for the executor but wanted *Mr. Chase,* a neighbor, and wanted Mrs. Merriam to have the rest of her property after the specified bequests were made.  Mr. Hooker went to his office, drew the will as di-

rected, returned with his stenographer, Miss Heideman, who was a witness to the will, and there read the will to her, and it was properly executed.⁹ Testatrix had made three prior wills, one dated September 3, 1919, in which she made her brother-in-law, Orange S. Warner, executor, and bequeathed him $1,000 as payment for his services as such executor, and in which she bequeathed her brother-in-law, Harmon Boardman, $1,500, and to Orange S. Warner her household furniture and supplies, and $2,000 to the three Methodist institutions as in her last will, and making no provision for the residue; another will dated January 23, 1913, practically the same as the will of September 3, 1919, and another will on July 27, 1909, wherein she appointed her brother-in-law, Orange S. Warner, her executor and bequeathed him $1,000 for his services as such executor, and in which she bequeathed $2,000 to two of the Methodist institutions before mentioned, making no provision as to the residue of her estate, the brother-in-law, Harmon Boardman, being unprovided for in this will as in the last will.

It is in evidence and not contradicted that during the lifetime of Mrs. Merriam's husband, who was a brother of testatrix, he had materially assisted her or her husband financially and that testatrix had said she was going to see that Mrs. Merriam was repaid, and she told several persons after her last will was made that she had left the rest of her property to Mrs. Merriam. It is also in evidence that the testatrix for the last year or so had not entertained the same cordial relations with her heirs at law; that she had visited some of them and that her visits were not satisfactory.

It will be noted that in all her wills she had left substantially the same amounts to the religious bodies named in her last will. So it appears that she had a fixed intent that was adhered to throughout. It was only as to the residue that a change was made. If the uncontradicted evidence is to be believed, the reason for the change becomes obvious. But whether there was a reason for it or not is immaterial if it

was her free will that dictated the change. As before stated, we find no evidence to sustain the finding of undue influence, much less clear and satisfactory evidence thereof, and we must therefore set aside such finding.

We are not unmindful of the rule stated in *Elliott v. Fisk,* 162 Wis. 249, 155 N. W. 110, to the effect that where three of the four essential elements required to set aside a will exist, the inference that the fourth exists may be inferred from rather weak proof of its existence if other circumstances seem to warrant it. Here the evidence does not show a testatrix susceptible to undue influence; it does not show a disposition on the part of Mrs. Merriam to exercise it; it does not show a result indicating its exercise; it shows only an opportunity to exercise it. That is not enough. Under the evidence the will is what may be termed a natural one, and strong evidence to set it aside is required. *Elliott v. Fisk,* 162 Wis. 249, 155 N. W. 110.

*By the Court.*—Order reversed, and cause remanded with directions to admit the will to probate.