*In re* COX ESTATE.
TOUMA *v.* ALLEN.

1. Judgment—Evidence—Judgment Notwithstanding the Verdict
—Appeal and Error.

The evidence and the reasonable inferences to be drawn from
it must be viewed in the light most favorable to defendants
on appeal from a Court of Appeals decision reversing a trial
court judgment for defendant which amounted to a granting
of plaintiff's motion for judgment notwithstanding the
verdict.

2. Wills—Undue Influence—Evidence.

Evidence presented in a will contest that there was ample op-
portunity for fiduciaries of a testatrix to exert undue influence
upon her, that the testatrix was weak physically and mentally
and thus susceptible to influence, that the will of testatrix
was substantially changed, that the close relationship between
the testatrix and contestants was never impaired, that the
landlady of testatrix dominated her and attempted to keep
relatives away, that the doctor of the testatrix suggested she
be placed under guardianship, that an attorney came to see
the testatrix about her will upon suggestion of her doctor
and that the testatrix signed checks made payable to a church
and its rector and drawn by the rector of that church while

References for Points in Headnotes

[1] 5 Am Jur 2d, Appeal and Error § 886.
[2, 3] 57 Am Jur, Wills § 387 *et seq.*
[2–5, 8] Presumption and burden of proof as to undue influence
on testator. 154 ALR 583.
[3] Presumption or inference of undue influence from testamentary
gift to relative, friend, or associate of person preparing will or
procuring its execution. 13 ALR3d 381.
[4, 5] 57 Am Jur, Wills § 437.
[6] 20 Am Jur 2d, Courts § 190.
[7] 53 Am Jur, Trial § 1051.
[8] 57 Am Jur, Wills § 389.

the testatrix was in bad physical condition, is sufficient to give rise to a question of fact and support a jury's verdict that the will should be set aside by reason of influence.

3. WILLS — UNDUE INFLUENCE — FIDUCIARY — BENEFITS — PRESUMPTIONS.

Evidence that a fiduciary relationship exists between a testator and a beneficiary or the representative of a beneficiary under a will and that the fiduciary influenced the making of the will creates a presumption of undue influence.

4. WILLS—UNDUE INFLUENCE—PRESUMPTIONS—EVIDENCE.

A presumption of undue influence by a fiduciary cannot be indulged in a will contest without evidence that some influence was exerted over the testator by the fiduciary, but where there is sufficient evidence for a jury to draw an inference that influence was exerted by the fiduciary, the office of the presumption is to supply the term "undue" as descriptive of the influence exerted.

5. WILLS — UNDUE INFLUENCE — PRESUMPTIONS — EVIDENCE — INFERENCE.

Testimony of fiduciaries that they did not exert influence over testatrix in the making of her will does not overcome a presumption of undue influence as a matter of law but leaves it as a permissible inference to be weighed with other evidence.

6. COURTS—DECISION—DICTUM—STARE DECISIS.

Decision of a court of last resort which intentionally discusses and decides a question *germane* to, though not necessarily decisive of, a controversy, is not dictum but is a judicial act of the court which it will thereafter recognize as a binding decision.

7. WILLS—UNDUE INFLUENCE—FORM OF VERDICT.

Failure to require a jury to clarify its verdict that a will "should be set aside by reason of influence" was not prejudicial error where the jury was properly instructed on the undue influence required to set aside a will and the language of the jury's verdict clearly indicated that the jury believed undue influence was exerted upon testatrix.

8. WILLS—UNDUE INFLUENCE—FIDUCIARY RELATIONSHIP.

Concession by proponents of the will that they were in a fiduciary relationship with a testatrix is sufficient to render the influence, found by a jury to have been exerted by them upon a testatrix, as undue influence.

Appeal from Court of Appeals, Division 2, Lesinski, C. J., and Moody and Quinn, JJ., reversing St. Clair, Halford I. Streeter, J. Submitted October 9, 1969. (Calendar No. 8, Docket No. 52,179.) Decided March 9, 1970.

13 Mich App 108 reversed.

Petition by Said M. Touma and Helen Taylor, executors of the estate of Harriet M. Cox, deceased, in the Probate Court for the County of St. Clair for the probate of her will. Clarence Allen and Lillian Allen Grice objected to the petition. Proceedings were certified to the Circuit Court of St. Clair County for jury trial. Verdict and judgment for contestants. Proponents appealed to the Court of Appeals. Reversed. Contestants appeal. Judgment of the Court of Appeals reversed, and that of the trial court affirmed.

*Davidson, Staiger & Staiger* and *Bodman, Longley, Bogle, Armstrong & Dahling (Theodore Souris,* of counsel), for proponents.

*O'Brien & Bolle* and *Richard E. Meden,* for contestants.

DETHMERS, J. Plaintiffs-appellees are the executors and proponents and defendants-appellants are the sole heirs at law of testatrix, Harriet M. Cox, and contestants in this will contest.

Plaintiffs offered the will for probate. Defendants filed objections based on several grounds, including that the will was obtained by undue influence. The matter was certified to circuit court for trial by jury. It returned a verdict that the will "should be set aside by reason of influence."

Plaintiffs had moved for directed verdict in circuit court, and then for judgment *non obstante veredicto* or, in the alternative, a new trial. The motions were denied and judgment was entered for defendants. Plaintiffs appealed to the Court of Appeals. That Court reversed the court below and ordered judgment entered for plaintiffs. From that defendants, on leave granted, appealed here. The order of the Court of Appeals amounted to a grant of plaintiffs' motion for judgment *non obstante veredicto*. Consequently, on this appeal, the evidence and reasonable inferences to be drawn therefrom must be viewed in the light most favorable to defendants. *In re Person's Estate* (1956), 346 Mich 517.

In its opinion the Court of Appeals stated that "the basic issue presented is whether the evidentiary record supports the verdict." It held, as a matter of law, that it did not. It set forth some of the pertinent facts in the case as follows:

"Harriet M. Cox died September 3, 1965 at age 98. She left no issue, and her only relatives were 2 cousins, the contestants. Her last will was dated August 21, 1965, and, among other things, it bequeathed $500 to each cousin, $500 to the Salvation Army, $200 to an Episcopal church in Hazel Park and $200 to a Reverend Paisley. The remainder of her estate was left * * * to Grace Episcopal Church of Port Huron to be used for such church purposes as the rector and vestry of said church shall determine. This materially altered the prior will of Harriet M. Cox executed in December of 1955, which provided for several nominal bequests, including $500 to Grace Episcopal Church, with the residue of the estate to contestants."

Testatrix's attorney, who drafted her wills and codicils, was Said M. Touma, one of the proponents here. To the 1955 will testatrix had caused a codicil to be added on February 17, 1962, which made a

change only as relates to executors but none as to bequests or devises to contestants.

In May of 1965, Mr. Touma saw her at church and she told him that she wished to make a change in her will as to executor; that was all. The 98-year-old testatrix, who died just 13 days after the date of the will herein contested, lived the last 14 months of her life with and was taken care of by Rachel Yeo, who was a member of Grace Episcopal Church of Port Huron. During that time testatrix was virtually bedridden and in the terminal stages of her last illness. She was partially deaf and blind in her right eye. She did not readily recognize relatives and old acquaintances. It was difficult to converse with her. An old friend, who frequently visited her, testified that she did not think testatrix was able to discuss the disposition of her property the last two months of her life. Her doctor testified that on August 11, 1965, 10 days before the date of her last will, she passed out completely, did not regain consciousness for from four to eight hours, and, so he thought, suffered from coronary insufficiency. Shortly after that, he advised her attorney to get in touch with her to see if her affairs were all in order. It was after that that the attorney drafted her last will. She had been becoming progressively less alert.

The cousins, contestants herein, and the mentioned old friend testified that Mrs. Yeo appeared to be unwilling to let them visit alone with testatrix. Attorney Touma was also a member and a vestryman of Grace Episcopal Church of Port Huron. Reverend Lees, rector of that church, frequently called at the Yeo home to visit testatrix. On August 13, 1965, eight days before the will, Reverend Lees received from testatrix a check for $700 and on August 24, 1965, three days after the will, another

for $1,634.48, both written by him, signed by her, and made payable to All Saints Church and to Reverend Lees.

Proponents concede the claim of contestants that attorney Said Touma and Reverend Lees stood in a confidential or fiduciary relationship to testatrix. Each testified, however, that he had not exerted any influence over testatrix in making her will. No one expressly testified to the contrary.

Testimony showed that a good relationship had existed between testatrix and her cousins and that she had remained fond of them to the end.

In support of their contention that the change in the contested will, giving the residue to the church rather than to them as in the previous will, resulted from the undue influence of her fiduciaries, attorney Touma and the Reverend Lees, exerted over testatrix, contestants point to evidence of the following as constituting proofs thereof:

1. There was ample opportunity to exert undue influence by her fiduciaries. In answer to this plaintiffs cite *In re Teller's Estate* (1939), 288 Mich 193, and *In re Alvord's Estate* (1932), 258 Mich 497, as holding that mere opportunity to exercise undue influence does not of itself invalidate a will; that there must be some evidence that such influence was exerted.

2. Testatrix's weakened physical and mental condition and susceptibility to influence.

3. Domination by Mrs. Yeo and attempt to keep relatives away.

4. Close relationship between testatrix and contestants, continuing to the end, thus negativing the idea that testatrix, at the last, desired to cut them off from what she had all along, in the previous will, provided for them.

5. Suggestion made by her doctor to her attorney shortly before date of last will that testatrix be placed under guardianship.

6. Drastic change in last will from previous will which she left unchanged for 10 years except for change of executor and her statement to her attorney only a couple of months before date of the last will that she wished to make a change in her will but that this related only to naming of an executor. In this connection defendants quote from *Sullivan* v. *Foley* (1897), 112 Mich 1, as follows:

"It is sufficient to say that the conduct of the proponent and of those who were active in her interest in having the will executed, and the condition of the testatrix at that time, as well as the execution of two former wills, different from the one in question, were proper to be shown, as bearing upon the question of undue influence, and were, we think, sufficient for the jury to find that such influence was used in procuring the will to be executed."

7. Fact that eight days before the date of the will Reverend Lees received from testatrix a check for $700 drafted by him and payable to him and a church and another for $1,634.48 three days after date of will, also in his handwriting and with him and a church as payees, while she was in the failing condition above noted. Defendants urge that these facts about checks written by Reverend Lees and signed by testatrix, at a time when her condition was bad, are indicative of solicitation by Mr. Lees, at least as relates to the checks, and suggest the likelihood of like action as to the will such that a jury at least might consider it.

8. Testimony that it was due to her doctor's suggestion rather than testatrix's own request and desire that her attorney came to see her about a will,

conflicting with testimony for proponents that testatrix had requested that the attorney come to see her, thus giving rise to a jury question of fact.

Conceding that while the above individual points, considered separately, might constitute scant evidence of the exertion of undue influence, defendants contend that taken together and in combination they are sufficient to give rise to a jury question of fact on the question. On this defendants cite *In re Person's Estate, supra*. We think the latter good authority for this contention. We agree that, viewed in the light most favorable to defendants, enough was presented in this connection from which inferences might properly be drawn to support the jury's verdict.

Defendants place a strong reliance on *In re Hartlerode's Estate* (1914), 183 Mich 51, and *In re Wood Estate* (1965), 374 Mich 278, as holding, so they say, (1) that evidence of a fiduciary relationship between a testator and a beneficiary under the will and (2) that the fiduciary or an interest which he represents benefits under the will create a presumption of undue influence. To this plaintiffs respond that the presumption does not, even under those authorities, arise merely from the fact that the fiduciary has benefited under the will, but that contestants must further show that the benefit resulted from the fiduciary relationship. Plaintiffs say the office of the presumption is merely to supply the term "undue" as descriptive of the "influence" after it has been established that influence was exerted. Plaintiffs insist that a presumption of undue influence cannot be indulged without evidence that some influence was exerted over the testator by the fiduciary. This, say plaintiffs, is lacking in the record of this case. Unassailable as plaintiffs' version of the law in this connection may be, they

err as to the evidence and inferences to be drawn therefrom as presented by this record. For, as above stated, there is evidence sufficient here to warrant the drawing of an inference by the jury that influence was exerted by the fiduciaries, to which the presumption may then be applied, thus permitting a finding of undue influence. Certainly there is as much evidence from which inferences of the exertion of influence over testatrix may be drawn in this case as existed in the *Wood* case upon which evidence the majority of this Court in that case relied for that purpose. Under the holdings in *Wood* and in *Kirilloff* v. *Glinisty* (1965), 375 Mich 586, the testimony of the fiduciaries that they did not exert influence over testatrix in the making of her will does not overcome the presumption as a matter of law but leaves it as a permissible inference to be weighed with that and other evidence, sufficient to sustain a jury verdict of undue influence.

In its opinion herein, the Court of Appeals wrote that if the words "and interests which she represented" as employed in the majority opinion in *Wood* were decision, not mere dictum, the case would sustain contestant's position in this case, but went on to say that it was dictum because in *Wood* it was the fiduciary herself, not some interest which she represented, that was the beneficiary under the will. This theory overlooks the fact that the majority opinion in *Wood* drew on *Hartlerode* in this connection and in support of its language in this regard, and that in the latter case not only the fiduciary but also an interest which he represented were the beneficiaries under the will, which fact was stressed in *Wood*. The term thus disposed of in the instant case by the Court of Appeals as being mere dictum in *Wood* must, accordingly, be given more significance than that. In *City of Detroit* v. *Michigan*

*Public Utilities Commission* (1939), 288 Mich 267, this Court quoted with approval from *Chase* v. *American Cartage Company, Inc.* (1922), 176 Wis 235, 238 (186 NW 598), the following:

"When a court of last resort intentionally takes up, discusses and decides a question *germane* to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision."

Finally, plaintiffs claim they are entitled, if not to the judgment of the Court of Appeals amounting to a judgment *non obstante veredicto,* then, at least, in the alternative, to a new trial because the verdict of the jury was not a finding of "undue influence" but only that the jury believed the will "should be set aside by reason of influence". We agree with the Court of Appeals that the trial court should have required the jury to clarify its verdict if requested by proponents. We do not agree that the court's failure to do so and the wording of the verdict are fatal to the result manifestly intended by the jury. The instructions of the court made it plain enough to the jury that to set aside the will it was essential to find that undue influence was exerted such as overpowered the mind of the testatrix and subordinated her will to the will of another. With such express instructions there can be no doubt that the language of the jury meant that this had occurred in the opinion of the jury. Furthermore, the fiduciary relationship having been conceded by proponents, as hereinbefore noted, that relationship sufficed to render that influence, which the jury found had been exerted, undue influence.

Judgment of the Court of Appeals reversed. Judgment of the circuit court, based on the verdict of the jury, setting aside the will, is affirmed.

Costs to defendants.

T. E. Brennan, C. J., and Kelly, T. M. Kavanagh, Adams, and T. G. Kavanagh, JJ., concurred with Dethmers, J.

Black, J., took no part in the decision of this case.